NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3450
_____

DONALD E. HAVILAND, JR.; THE HAVILAND LAW FIRM, LLC;
HAVILAND HUGHES, LLC.,
                                        Appellants

v.

SHANIN SPECTER; THOMAS R. KLINE;
KLINE & SPECTER, A Professional Corporation
_____

On Appeal from the United States District Court
for the District of  New Jersey
District Court No. 3-12-cv-05580
District Judge: The Honorable Freda L. Wolfson

Argued March 5, 2014

Before:  AMBRO, SMITH, and HARDIMAN, *Circuit Judges*

(Filed: March 20, 2014)

Mark L. Rhoades     [ARGUED]
Mitts Milavec
1835 Market Street
12th Floor
Philadelphia, PA  19103
        *Counsel for Appellant*

Charles L. Becker     [ARGUED]
Kline & Specter
1525 Locust Street

1

19th Floor
Philadelphia, PA 19102

Marshall D. Bilder
Sterns & Weinroth
50 West State Street
P.O. Box 1298
Suite 1400
Trenton, NJ 08607

David C. Kistler
Stephen M. Orlofsky
Blank Rome
301 Carnegie Center
Third Floor
Princeton, NJ 08540
   *Counsel for Appellee*


_____

OPINION
_____

SMITH, *Circuit Judge.*

Neil Sedaka's observation that "Breaking Up Is Hard to Do" rings true whether the separation relates to lovers or lawyers. This case concerns the latter.

Appellant Donald Haviland is a lawyer formerly employed by Kline & Specter, P.C. During his tenure at Kline & Specter, Haviland presided over the firm's Class Action Department and maintained an active complex litigation practice. In August 2006, Haviland informed Kline & Specter of his intention to leave and start his own firm. The break-up began with a tone of cordiality, with the parties agreeing that Haviland's new firm would assume control of certain matters

previously managed by Haviland. It turned contentious, however, when Kline & Specter discovered that, on his way out, Haviland had secretly solicited class representatives to elect him to replace Kline & Specter as class counsel in one of that firm's class action cases.

After the fallout, Haviland and Kline & Specter both filed Writs of Summons in the Philadelphia Court of Common Pleas seeking contractual damages under Haviland's employment contract. Those writs, however, were stayed in May 2008, when the court granted Kline & Specter's previously filed petition to send the matter to arbitration.

In September 2012, while the Writs of Summons were still stayed in Pennsylvania state court, Haviland, the Haviland Law Firm, LLC, and Haviland Hughes, LLC (collectively, "Plaintiffs"), commenced this action in the United States District Court for the District of New Jersey against Shanin Specter, Thomas R. Kline, and Kline & Specter (collectively, "Defendants"). Plaintiffs primarily asserted claims under Pennsylvania state law. However, to trigger federal question jurisdiction under 28 U.S.C. § 1331, Plaintiffs also alleged that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961 *et seq.*, by paying bonuses to firm employees and requiring a portion be contributed to candidates for political office, all as part of a scheme to circumvent campaign finance laws.

In November 2012, Defendants moved to dismiss the complaint, arguing that the RICO claim was barred by the four-year statute of limitations. In particular, Defendants contended that Haviland knew he was making political contributions at the time he made them, and because Haviland left the firm in September 2006, his claim was time barred no later than September 2010.

Defendants also moved for sanctions under both 28 U.S.C. § 1927 and the Court's inherent powers as described in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Defendants argued that Haviland knew his claim was time-barred when he filed it, but, acting in bad faith, chose to file the suit anyway for the sole purpose of embarrassing Kline & Specter and besmirching the firm's reputation.

On November 30, 2012, Haviland filed an amended complaint reasserting his previous claims and adding a state law claim for fraud. The amendment, however, failed to remedy the statute of limitations deficiency. Accordingly, Defendants once again moved to dismiss and for sanctions. Plaintiffs filed a responsive brief on all issues. Then, on April 4, 2013, after Defendants' motion to dismiss had been pending for more than three months, Plaintiffs voluntarily dismissed their case under Federal Rule of Civil Procedure 41. They later explained that they dismissed their federal case because the arbitration had concluded and the stay in the Philadelphia Court of Common Pleas had been lifted, thereby opening that forum for further litigation.

4

On April 5, 2013, Defendants wrote a letter to Judge Wolfson reminding her that, although the motion to dismiss was rendered moot by the voluntary dismissal, the motion for sanctions remained pending. The court scheduled the matter for a hearing, which was held on July 24, 2013. At the hearing, Defendants abandoned their request for sanctions under § 1927 and stated that they were seeking sanctions only under the Court's inherent authority and to be imposed solely against Mr. Haviland. Judge Wolfson then engaged in a discussion with Haviland's counsel regarding the basis for a federal RICO claim and why Plaintiffs continued to pursue it in the face of a fatal statute-of-limitations defense. Unpersuaded by counsel's responses, Judge Wolfson decided to impose "limited sanctions" in the amount of $2,500 against Mr. Haviland. She expressed frustration that "my court, our court was used by the plaintiff in this case and used improperly to forum shop." However, she also explained that Defendants should have proceeded under Rule 11, and because they did not, she was reluctant to impose a greater penalty.

In an amended order, Judge Wolfson found that "Plaintiffs acted in bad faith, vexatiously, wantonly, and for oppressive reasons by filing a time-barred RICO claim in order to fabricate jurisdiction in this Court, and by opposing Defendants' Motion to Dismiss the RICO claim after learning that the RICO claim was indeed time-barred." Further, she found that "Donald E. Haviland, Jr. was responsible for these actions," and thus ordered the $2,500 sanction to be paid by

Mr. Haviland. Plaintiffs timely appealed.[1]

"The Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard before sanctions are imposed on a litigant or attorney." *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995). The procedural protections required by the Fifth Amendment, however, are not cemented; they vary depending on the circumstances of the case. *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) ("The precise form of procedural protection required will, of course, vary with the circumstances of the case."); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 570 (3d Cir. 1985) ("The form which those procedural protections must take is determined by an evaluation of all the circumstances and an accommodation of competing interests.").

Plaintiffs complain that they were not provided adequate notice that the Court was considering imposing sanctions pursuant to its inherent authority. We disagree. Defendants twice moved the District Court to impose sanctions against Plaintiffs, both times invoking the Court's inherent authority. Both motions were served on Plaintiffs, and Plaintiffs filed a response to the second. After Plaintiffs voluntarily dismissed the action, Defendants submitted a letter to Judge Wolfson,

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review orders imposing sanctions for abuse of discretion." *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991)). "When the procedure the district court uses in imposing sanctions raises due process issues of fair notice and the right to be heard, however, our review is plenary." *Id.* (citations omitted).

which was also served on Plaintiffs, reminding her that the second motion for sanctions was still ripe for consideration. Finally, the District Court's notice scheduling the hearing stated that the Court would hear argument "on the previously filed Motion for Sanctions." On this record, we conclude that Haviland was amply notified of the possibility of being sanctioned under the Court's inherent authority.

The District Court also provided Plaintiffs a sufficient opportunity to be heard. The District Court held an oral hearing—with Haviland and his counsel present—before imposing sanctions. Despite Plaintiffs' argument to the contrary, there was no need for the District Court to hold an additional evidentiary hearing because the order imposing sanctions was not predicated on facts that needed to be established through an evidentiary showing. *See Rogal v. Am. Broad. Co., Inc.*, 74 F.3d 40, 45 (3d Cir. 1996) (explaining that evidentiary hearings are often unnecessary and the decision to require one "depends heavily on the specific nature" of the sanctionable conduct). Tellingly, Plaintiffs fail to explain why an evidentiary hearing was necessary and what evidence would have been presented. *Compare Adams v. Ford Motor Co.*, 653 F.3d 299, 309 (3d Cir. 2011) (discussing the evidence which could have been submitted at an evidentiary hearing had one been provided). Our review of the record reveals that Judge Wolfson had ample basis to conclude that Haviland acted in bad faith based on the pleadings, briefs,

the various exhibits submitted in support of the motion for sanctions, and statements from counsel at the hearing. This procedure was more than adequate to satisfy the demands of the Fifth Amendment's Due Process Clause.

We find no merit to Plaintiffs' contention that the Court was deprived of jurisdiction to rule on the sanctions motion after Plaintiffs voluntarily dismissed their complaint. The Supreme Court has explicitly held that voluntary Rule 41(a)(1) dismissal does not deprive a district court of jurisdiction over a Rule 11 motion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("The district court's jurisdiction, invoked by the filing of the underlying complaint, supports consideration of both the merits of the action and the motion for Rule 11 sanctions arising from that filing."). Although *Cooter* addressed sanctions under Rule 11, we cannot see any principled reason why the Court's decision would not apply equally to sanctions imposed pursuant to a district court's inherent authority.[2]

---

[2] We also reject Plaintiffs' argument that the District Court inappropriately imposed sanctions against the two plaintiff law firms. Plaintiffs point to a sentence in the Court's amended order that states: "*Plaintiffs* acted in bad faith, vexatiously, wantonly, and for oppressive reasons . . . ." App. 7 (emphasis added). They argue that this statement, which refers to Plaintiffs collectively, suggests that all plaintiffs were culpable for the sanctionable conduct. Read as a whole, however, the District Court's order is abundantly clear that Mr. Haviland was the culpable actor and the party against whom sanctions were being imposed. *See* App. 6 ("Defendants clarified . . . that they [are] seeking only sanctions against Donald E. Haviland, Jr. in his individual capacity"); App. 7 ("the Court having further found on the record that Donald E. Haviland, Jr. was responsible for these actions"); App. 7 ("Defendants' motion for Sanctions is granted in the amount of $2,500 to be paid to Defendants by Donald E. Haviland, Jr."). We fail to see any reversible error.

For these reasons, we will affirm.